UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD LOGSDON

     Plaintiff,

v.                                                        Case No. 5:23-cv-215-TPB-PRL

BILLIE WOODS, Sheriff, and
WILLIAM OLIVER, Chaplain,

     Defendants.

_____/

## ORDER DISMISSING CASE

Richard Logsdon, formerly a pretrial detainee in the Marion County jail,[1] sues Sheriff Billie Woods and Chaplain William Oliver for federal civil rights violations under 42 U.S.C. § 1983. At the center of Logsdon's complaint is a jail policy that requires verification of a prisoner's religious affiliation before the prisoner is eligible to receive a religious diet. He proceeds *pro se* on his Third Amended Complaint. (Doc. 32).

The defendants move to dismiss the Third Amended Complaint (Doc. 82), and Logsdon responds in opposition (Doc. 88). For the reasons explained herein, the motion to dismiss is **GRANTED**, and the Third Amended Complaint is dismissed with prejudice.

---

[1] Logsdon is an inmate of the Florida Department of Corrections and presently confined at the Santa Rose Correctional Institution. *See* Florida DOC Offender Information Search at https://pubapps.fdc.myflorida.com/OffenderSearch/Search (last accessed March 12, 2026). Logsdon serves a five-year sentence for soliciting a child for unlawful sexual conduct using computer services or devices in violation of 847.0135(3)(a),F.S. *State v. Logsdon*, No. 2019-CF-000123 (Fla. 5th Jud. Cir.).

I.      **Complaint**

Logsdon alleges the following facts in his operative pleading (Doc. 32, at 13–16):  On or about January 14, 2023, Logsdon was booked into the Marion County jail, at which time he told the booking officer that he is Jewish and requires a kosher diet. (*Id.* at 13).  The booking officer told Logsdon that a request for kosher food must be sent to the chaplain for approval.  (*Id.*).

Logsdon submitted a request to Chaplain Oliver for a kosher diet, and on January 23, 2023, Oliver responded that Logsdon must complete a religious dietary form.  (*Id.*).  On January 24, 2023, Logsdon submitted the completed form.  (*Id.*).

On January 31, 2023, Logsdon submitted another request advising that he had not received the kosher diet.  (*Id.*).  He was given a second form, which he submitted on February 5, 2023.  (*Id.*).  Chaplain Oliver stated that he never received Logsdon's first form.  (*Id.*, at 14).  Logsdon requested to speak to the sector sergeant.  (*Id.*).  The sergeant told Logsdon he would not receive a kosher diet because he failed to provide a name or phone number to verify his request.  (*Id.*).  On February 27, 2023, Logsdon submitted a request to file a formal grievance but did not receive a response to the request.  (*Id.*).

On April 9, 2023, Logsdon spoke with Chaplain Oliver about his request for a kosher diet.  (*Id.*).  Chaplain Oliver instructed him to submit a request.  (*Id.*).

On June 11, 2023, Logsdon filed his third request for a kosher diet and indicated that his religious diet could be verified by contacting the Florida Department of Corrections (FDOC).  (*Id.*).  On June 13, 2023, Chaplain Oliver

2

delivered a response that stated, "You were responded to on 1/23/23 and 2/7/23 with denials due to 'unable to verify.'" (*Id.*).

On February 26, 2024, Logsdon submitted a request to Chaplain Oliver and stated that he wished to participate in kosher foods and prayers for Passover. (*Id.*, at 15). On March 4, 2024, Oliver responded, "you will receive information and guidelines on observance procedures for those on nonkosher meals desiring to observe Passover." (*Id.*). A few days later, Oliver sent Logsdon a form from the Aleph Institute, which could be used to verify that he is Jewish. (*Id.*).

On March 14, 2024, Logsdon submitted a request to speak with the sergeant to file a formal grievance against Chaplain Oliver about the Passover holiday. (*Id.*). On March 18, 2024, the request was denied. (*Id.*).

On March 19, 2024, Chaplain Oliver spoke to Logsdon about the Aleph Institute form. (*Id.*). Logsdon explained that he did not need Rabbi Katz to verify that he is Jewish, and he walked away from Oliver. (*Id.*).

On March 20, 2024, Logsdon filed a request to speak with the sector sergeant about the verification policy. (*Id.*). On March 21, 2024, Chaplain Oliver again told Logsdon that he needed to verify that he is Jewish to get on the list for the Passover holiday. (*Id.*, at 16). Logsdon responded that another inmate did not have to get verification that he is Jewish and that there is no legal basis for the verification policy. (*Id.*).

3

Logsdon alleges that the defendants' enforcement of the verification policy violates his constitutional rights and Florida state law.[2]  (*Id.*, at 12–13). He sues Sheriff Woods and Chaplain Oliver in both their individual and official capacities. (*Id.*, at 2).  He seeks an order enjoining the defendants from enforcing the verification policy and ordering the defendants to provide him with the kosher meals required by his Jewish faith.  (*Id.*, at 16).  He also seeks to recover compensatory and punitive damages.  (*Id.*, at 17).

## II.    Procedural Background

After initiating this case, Logsdon moved for a preliminary injunction.  (Doc. 40).  The Court denied the motion and found that Logsdon "failed to meet his burden to preliminarily enjoin Defendants from enforcing the Jail's religious verification policy and require Defendants to provide [him] with kosher meals because he has failed to show a substantial likelihood of success on the merits." (Doc. 56, at 4).  The Court found that Logsdon completed the jail's Religious Dietary Request Form and provided the name and number of his brother, John, as the person to contact to verify his religious affiliation, noting that John was the "worship pastor at his church." (*Id.*, at 6).  When Logsdon brother was contacted, he stated that "he was a leader at a Baptist church and that he could not authenticate [Logsdon's] religion."  (*Id.*).

Importantly, the Court found that "the Jail's verification policy is not a substantial burden on an inmate's religious practice under the RLUIPA—nor the

---

[2] In his Third Amended Complaint, Logsdon invokes the First, Fifth, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Article I, Section 3, of the Florida Constitution, and § 761.03, *F.S.*

First Amendment's Free Exercise Clause." (*Id.*, at 6). And because Logsdon failed to provide information to verify his religious affiliation after being afforded multiple opportunities to do so, he was not entitled to a preliminary injunction. (*Id.*, at 7).

Logsdon appealed the Court's denial of a preliminary injunction. On March 28, 2025, the circuit court dismissed the appeal, finding that the Court did not abuse its discretion in denying Logsdon's motion for preliminary injunction. Consistent with the Court's ruling, the circuit court found that, "[w]hile the verification policy may be considered inconvenient, as it requires that Logsdon undertake the additional step of having his religious affiliation confirmed before he is given a kosher diet, such a requirement is not enough to constitute a substantial burden on Logsdon's religious practices, . . . and the fact that Logsdon's brother has stated that he cannot verify Logsdon's religious affiliation does not turn it into one." (Doc. 76, at 3).

After the circuit court dismissed the appeal, the Court reopened this action, and Sheriff Woods and Chaplain Oliver moved to dismiss Logsdon's Third Amended Complaint. (Docs. 80;82). Logsdon filed a response in opposition to the motion. (Doc. 88).

## III. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

## IV.    Analysis

Logsdon challenges the jail's policy that requires verification of his Jewish religious affiliation before he is eligible to receive a kosher diet.  This claim—whether pleaded under the protections of the Constitution, RLUIPA, or state law—rests on the same set of factual allegations contained in the Third Amended Complaint.  (Doc. 32, at 12–16); *see Brocato v. Comm'r Hamm*, No. 7:24-cv-489, 2026 WL 346007, at \*5 (N.D. Ala. Jan. 13, 2026) (resolving a prisoner's First Amendment Free Exercise claim concurrently with his RLUIPA claim because the claims "rest on the same factual allegations").

The First Amendment prohibits Congress from enacting any law "prohibiting the free exercise" of religion.  U.S. Const. amend I.  "It applies to the states (and their political subdivisions) through the Due Process Clause of the Fourteenth Amendment."  *Dorman v. Aronofsky*, 36 F.4th 1306, 1312 (11th Cir. 2022) (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (citing cases)).  Importantly, however, "[a]lthough prison inmates retain protections afforded by the

6

First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *Turner v. Safley*, 482 U.S. 78, 89 (1987). "To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his sincerely held religious beliefs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007); *see also Robbins v. Robertson*, 782 F. App'x 794, 801 (11th Cir. 2019) (citing *GeorgiaCarry.Org., Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012) ("First Amendment Free Exercise Clause precedent is clear: a plaintiff must allege a constitutionally impermissible burden on a sincerely held religious belief to survive a motion to dismiss.")).

"The RLUIPA was enacted, in part, to address the 'frivolous or arbitrary barriers imped[ing] institutionalized persons' religious exercise." *Dorman*, 36 F.4th at 1313 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005)). RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

7

42 U.S.C. § 2000cc—1(a). To establish a prima facie case under RLUIPA, the plaintiff must demonstrate his engagement in religious exercise was substantially burdened by the challenged law, regulation, or practice. *Ramirez v. Collier*, 595 U.S. 411, 425 (2022). The burden then shifts to the defendant to prove the challenged action is the least restrictive means of furthering a compelling governmental interest. *Id.* RLUIPA provides only prospective, injunctive relief. *Davila v. Marshall*, 649 F. App'x 977, 980 (11th Cir. 2016) ("RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities.").

"RLUIPA provides greater religious protection than the First Amendment." *Dorman*, 36 F.4th at 1313. RLUIPA protects inmates "who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721; *Smith v. Comm'r, Ala. Dep't of Corr.*, 844 F. App'x 286, 289 (11th Cir. 2021) (same). Importantly, the circuit court has recognized that "[i]f a claim fails under the RLUIPA—which embeds a heightened standard for government restrictions of the free exercise of religion—it necessarily fails under the First Amendment." *Dorman*, 36 F.4th at 1313 (citing *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007)) ("Because we conclude that Mr. Dorman's free exercise claim fails under the more protective framework of the RLUIPA, we need not separately discuss the First Amendment.").

A.    **Failure to state a claim**

8

Defendants argue that Logsdon's Third Amended Complaint must be dismissed because he fails to allege a violation of his constitutional rights. They simply argue that the Court's earlier ruling denying Logsdon's request for a preliminary injunction, which was affirmed by the circuit court[3]—that the jail's verification policy does not constitute a substantial burden on Logsdon's religious rights—is fatal to Logsdon's case. (Doc. 82, at 14).

In response, Logsdon argues the opposite: he argues that the jail's verification policy[4] does impose a substantial burden on the exercise of his sincerely held religious beliefs. He concedes that he "has never belonged to an organized religious group, but he still has sincerely held religious beliefs." (Doc. 88, at 4). He believes that the policy which requires that his Jewish faith be verified by an outside organization is unconstitutionally burdensome and that his sincerely held religious beliefs alone should be sufficient to verify his Jewish faith. (*Id.*, at 6).

---

[3] The circuit court dismissed Logsdon's appeal after concluding that this Court did not abuse its discretion in denying his motion for a preliminary injunction. (Doc. 76, at 3).

[4] The verification policy reads as follows (Doc. 82-1, at 21–22):

> 3. Religious Services – Religious guidance and scripture study are provided by the Chaplaincy Program. See posted meeting schedules. Religious diets may be provided upon receipt of a written request and approval of the Chaplain.
>
> a. Special religious diets shall only be provided to those inmates who are members of an organized religious group requiring adherence to religious dietary laws.
>
> b. Affiliation with recognized religious groups must be verified by the Chaplain prior to approval of the religious diet.
>
> c. All requests for religious diets must be submitted, in writing, to the Chaplain within 30 days of arrival at the facility.

At the motion to dismiss stage, the Court asks whether Logsdon has plausibly alleged that the jail's verification policy substantially burdened the exercise of his Jewish faith. *See Dorman*, 36 F.4th at 1314 ("[T]he first inquiry under the RLUIPA is whether Mr. Dorman has plausibly alleged that the 45-day Passover registration requirement substantially burdened the exercise of his Jewish faith."). The Court agrees with Defendants that its prior ruling and the ruling of the circuit court are determinative here. "Under the law of the case doctrine, courts may not revisit issues that were decided explicitly or by implication in a prior appeal." *Murray v. Archer*, No. 25-12309, 2026 WL 412020, at *2 (11th Cir. Feb. 13, 2026) (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005)). "[T]he law is clear that [the law of the case doctrine] comprehends things *decided by necessary implication* as well as those decided explicitly." *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (emphasis in original). "The doctrine's purpose is to bring an end to litigation[,] . . . [to] protect[] against the agitation of settled issues and [to] assure[] obedience of lower courts to the decisions of appellate courts." *Id*. (quotations and citations omitted).

In denying Logsdon's motion for a preliminary injunction, the Court found that the "Jail's verification policy is not a substantial burden on an inmate's religious practice under the RLUIPA—nor the First Amendment's Free Exercise Clause." (Doc. 56, at 6). The Court reasoned:

> While it may be considered an inconvenience to have to provide information to verify one's religious affiliation, it does not, however, pressure, force, or coerce Plaintiff or any other inmate with religious dietary requests to abandon,

> forego, confirm, or delay their religious beliefs or practices. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) (finding the jail's registration requirement for inmates to participate in Jewish Passover not to be a substantial burden on an inmates Jewish faith because it does not "pressure, force, or coerce" inmates to "abandon, forego, conform, or delay any of their religious beliefs or practices"); *see also Konikov v. Orange Cnty.*, 410 F.3d 1317, 1323–24 (11th Cir. 2005) (finding ordinance which required a rabbi to apply to a zoning board for a special exception in order to operate a "religious organization" did not constitute a substantial burden under the RLUIPA because it did not "coerce conformity of a religious adherent's behavior").

(*Id.*, at 6–7).

Similarly, in dismissing Logsdon's appeal, the circuit court found that "[t]he policy with which Logsdon takes issue does not substantially burden his free exercise of religion[,]" citing both *Dorman* and *Konikov*, the cases on which this Court relied. (Doc. 76, at 3). The circuit court reasoned, "[w]hile the verification policy may be considered inconvenient, as it requires that Logsdon undertake the additional step of having his religious affiliation confirmed before he is given a kosher diet, *such a requirement is not enough to constitute a substantial burden on Logsdon's religious practices*[.]" (Doc. 76, at 3). (emphasis added).

Although this case is in a different procedural posture now (motion-to-dismiss stage) than it was when the circuit court issued its ruling (appeal from a denial of a preliminary injunction), the Court concludes that the law-of-the-case doctrine bars reconsideration of whether the jail's verification policy substantially burdened the exercise of Logsdon's religious rights. None of the common exceptions to this doctrine are relevant as no change in controlling authority has occurred and application of the

doctrine will not result in manifest injustice. *See Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). And, although this Court considered evidence that showed Logsdon could not authenticate his Jewish religion before denying the preliminary injunction, that evidence is not "substantially different" from—but rather, consistent with—the facts alleged in the Third Amended Complaint. *See id.* (explaining that the doctrine may not apply when "substantially different evidence is produced"). Indeed, the "issue presented" has not changed now that this case has returned from appeal. *Cf. id.* ("When the record changes [on remand from an appeal], which is to say when the evidence and the inferences that may be drawn from it change, the issue presented changes as well."). Logsdon continues to allege (as he did in his motion for preliminary injunction and on appeal) that he was denied a kosher diet because he was unable to verify his Jewish faith, and the verification policy imposes an impermissible burden on his exercise of his sincerely held religious beliefs. (Doc. 32, at 16). The law-of-the-case doctrine precludes reconsideration of the circuit court's ruling that Logsdon's claim fails because the requirement that he verify his faith does not "constitute a substantial burden on Logsdon's religious practices[.]" (Doc. 76, at 3). Accordingly, Logsdon's claims under RLUIPA and the First Amendment must be dismissed.

### B.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity for the claims asserted against them in their individual capacities. "Qualified immunity offers complete protection for individual public officials performing discretionary functions

12

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022). Once this showing is made, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Id.* at 1340–41. Thus, a motion to dismiss on qualified immunity grounds "will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

There is no dispute that Defendants acted within the scope of their discretionary authority at all relevant times. Accordingly, the Court considers whether the Third Amended Complaint sufficiently alleges that Defendants Woods and Oliver violated Logsdon's clearly established constitutional rights.

### 1.    Sheriff Woods

Sheriff Woods argues that he is entitled to qualified immunity because Logsdon neglects to allege any facts that he violated Logsdon's constitutional rights. (Doc. 82, at 8). Although Logsdon alleges in one sentence that Sheriff Woods "authorized the use of this [verification] form and has agreed with [Chaplain] Oliver," this singular allegation is insufficient, Sheriff Woods argues, because no facts support the allegation. (*Id.*) (citing Doc. 32, at 14). Sheriff Woods emphasizes that Logsdon

13

fails to allege any facts that show he was aware of Logsdon and his demands, he interacted with Logsdon, or that he participated in any decisions concerning Logsdon's requests. (*Id.*).

In response, Logsdon points to the Introduction to the Marion County Jail Inmate Rules and Regulations Handbook, which provides that "[t]he rules and regulations in this handbook are subject to change at the discretion of the Sheriff and/or his designee." (Doc. 88, at 3) (citing Doc. 82-1, at 2). He argues that Sheriff Woods authorized the verification policy at issue because the Handbook states that it "is reviewed at least once each year, and necessary revisions made." (*Id.*).

Sheriff Woods is entitled to dismissal of the individual-capacity claim alleged against him because Logsdon neglects to allege sufficient facts to show that he was personally involved the alleged constitutional violation. An earlier screening order cautioned Logsdon that "[t]o state a plausible claim for relief, the facts alleged by the Plaintiff must contain sufficient allegations to show that the individual defendant *personally participated* in the alleged constitutional violation." (Doc. 6, at 6) (emphasis in original) (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). There is no vicarious liability for constitutional claims against individual government actors: "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (recognizing that generally, supervisory officials are not liable under § 1983 for the acts or omissions of their subordinates based on a theory of respondeat superior or vicarious liability). The Court's earlier screening

14

order cautioned Logsdon that he must "clearly describe *how each named defendant* is involved in the alleged constitutional violation(s) in the body of the complaint."  (Doc. 6, at 3) (emphasis in original).  Logsdon neglected to do so.

Logsdon's bare allegation that Sheriff Woods "authorized the use of this [verification] form and has agreed with [Chaplain] Oliver" is not supported by any other facts.  (Doc. 32, at 14).  Logsdon alleges no facts to show the circumstances surrounding Sheriff Wood's authorization of the verification form or to show how he agreed with Chaplain Oliver or about what matter he agreed with Chaplain Oliver.  This allegation, standing alone, is not "enough to raise a right to relief [against Sheriff Woods] above the speculative level."  *Twombly*, 550 U.S. at 555.  Instead, it amounts to a conclusory statement in support of a threadbare recital of the elements.  *See Iqbal*, 556 U.S. at 678 (explaining that the law requires something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Furthermore, Logsdon cannot save his claim by arguing that the Handbook's Introduction shows that Sheriff Woods was personally involved in the alleged constitutional violations.  A complaint may not be amended by briefs in opposition to a motion to dismiss. *See Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  Regardless, the Handbook's Introduction merely states that the Handbook is subject to change at the Sheriff's discretion and that the Handbook is reviewed annually by an unidentified person or entity.  Nothing in the Handbook's Introduction shows that Sheriff Woods was personally involved in applying the verification policy to Logsdon's

15

request for kosher meals.  Because Logsdon's Third Amended Complaint alleges insufficient facts to show Sheriff Woods personally participated in the alleged constitutional violation, the claim asserted against him in his individual capacity must be dismissed.[5]

### 2.   Chaplain Oliver

Chaplain Oliver argues that he is entitled to qualified immunity because Logsdon fails to show that he violated Logsdon's clearly established constitutional rights by requiring that he verify his Jewish faith before being eligible for a kosher diet.  Oliver argues, and the Court agrees, that the Court's earlier ruling that the jail's verification policy does not constitute a substantial burden on Logsdon's constitutional rights, and the circuit court's consistent ruling, bars Logsdon's claim.

Furthermore, Oliver emphasizes that Logsdon's admits in the Third Amended Complaint that other inmates of various religions who complied with the verification policy received a kosher diet.  According to Oliver, this admission is fatal to Logsdon's claim because it establishes that the verification policy is applied equally to all inmates who request a religious diet.

To the extent Logsdon attempts to state a distinct claim (against either defendant) under the Fourteenth Amendment's Equal Protection Clause, such claim fails.  The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially

---

[5] Logsdon's individual-capacity claim against Sheriff Woods fails for the additional reason that, as explained *supra* in section III.A., Logsdon fails to state claim under RLUIPA or the First Amendment.

a mandate that all similarly situated persons be treated alike. U.S. Const. amend. XIV, § 1. An earlier screening order set forth the applicable law for an Equal Protection Claim. (Doc. 6, at 4). "To establish an equal protection claim, a [plaintiff] must demonstrate that (1) he is similarly situated with other [persons] who received more favorable treatment,' *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (quotation omitted), and (2) the defendant 'engaged in invidious discrimination against him based on race, . . . national origin, . . . or some other constitutionally protected interest,' *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)." *Mohit v. West*, No. 21-12483, 2023 WL 239992, at *4 (11th Cir. Jan. 18, 2023).

Logsdon fails to state a claim under the Equal Protection Clause. Logsdon alleges, "[o]ther inmates in this pod—House of Yahweh, Muslim Christian—are receiving the kosher diet and provided contact information and/or FDOC information to get such. Plaintiff has provided the same information but is being denied the kosher diet." (Doc. 32, at 15). According to Logsdon's own allegations, he is not similarly situated to other inmates who are receiving the kosher diet because those inmates have "provided contact information" to verify their religious affiliation. *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1313 (11th Cir. 200) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause."). Additionally, Logsdon alleges no facts to show that the verification policy establishes a preference for one religion over

17

another, that it is racially discriminatory, or is being unequally applied to inmates who request a religious diet.

### C.   State law claims

Defendants argue that, to the extent Logsdon has separately alleged claims arising under Article 1, Section 3 of the Florida Constitution and under § 761.03, *F.S.*, such claims should be dismissed.  Again, they argue that because this Court and the circuit court have upheld the verification policy as not imposing a substantial burden under RLUIPA and the First Amendment, the same holding should apply to Logsdon's claims arising under Florida state law.  (Doc. 82, at 14–15).  In response, Logsdon repeats his challenge to the verification policy, arguing that it substantially burdens his freedom to exercise his sincerely held religious beliefs.  (Doc. 88, at 11).

Article I, Section 3, of the Florida Constitution mirrors the Establishment Clause of the United States Constitution and provides "[t]here shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."  Florida's Religious Freedom Restoration Act ("FRFRA"), § 761.03(1), *F.S.*, provides that the government cannot "substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability," unless the application of the burden is in "furtherance of a compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest."  "[T]he FRFRA applies to and protects those in custody[.]"  *Dorman*, 36 F.4th at 1315 (citing *Yasir v. Singletary*, 766 So. 2d 1197, 1198 (Fla. 5th DCA 2000)).

18

"[T]he substantial burden standard is the same under both FRFRA and RLUIPA." *Westgate Tabernacle, Inc. v. Palm Beach Cnty.*, 14 So. 3d 1027, 1031 (Fla. 4th DCA 2009) (citation omitted) ("[F]ederal and state courts have applied the same analysis under FRFRA and RLUIPA."). Therefore, because the verification policy does not pose a substantial burden under RLUIPA, and because the FRFRA and RLUIPA use equivalent substantial burden standards, Logsdon fails to state a claim under the FRFRA.

## V.   Conclusion[6]

Accordingly, the motion to dismiss (Doc. 82) is **GRANTED** and the Third Amended Complaint is **DISMISSED WITH PREJUDICE**. The Clerk is directed to enter a judgment in favor of Defendants Wood and Oliver and to **CLOSE** this case.

DONE and ORDERED in Chambers in Tampa, Florida, this 13th day of March, 2026.

**TOM BARBER**
**UNITED STATES DISTRICT**
**JUDGE**

---

[6] Because the Court concludes that dismissal is warranted for the reasons explained herein, the Court need not address Defendants' remaining arguments for dismissal.

19